## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

KEVIN KECK AND APRIL KECK,

      **Plaintiffs,**

v.

      **Case No.**

TOWN OF AMBER,

      **Defendant.**

## COMPLAINT

COME NOW Plaintiffs, Kevin Keck and April ("Nikki") Keck ("Plaintiffs") and for their causes of action against Defendant, the Town of Amber ("Defendant") hereby state as follows:

## PARTIES

1. Plaintiffs are individuals residing in the Town of Amber situated in Grady County in the State of Oklahoma.

2. Defendant is an Oklahoma town duly incorporated in accordance with Title 11 of Oklahoma's statutory code.

## VENUE AND JURISDICTION

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim pursuant to 42 U.S.C. § 1983 arises under the laws and Constitution of the United States.

4. This Court has subject matter jurisdiction over Plaintiffs' remaining claim pursuant to 28 U.S.C. § 1367 because it arises out of the common nucleus of operative facts.

1

5.      Venue is proper in this Court because it is the judicial district in which a substantial part of the omissions or events giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

6.      Plaintiffs own real property situated in Grady County, Oklahoma, with the address of 10 Chastain, Amber, Oklahoma 73004, also described as the SE/4 NW/4 and South 4.73 feet of the SE/4 NE/4 NW/4 of Section 19, Township 8 North, Range 6 West of the Indian Meridian, Grady County, Oklahoma ("Plaintiffs' Property").

7.      In April, 2024, the Town of Amber, acting by and through the Town Board, undertook improvements to the drainage system located in a residential neighborhood addition situated to the north of, and upstream to, Plaintiffs' Property.

8.      These improvements included lining the borrow ditches in the residential neighborhood with concrete in order to increase the flow of storm runoff water downstream out of the residential neighborhood addition.

9.      As a result of the changes to the borrow ditches, storm runoff water now flows out of the neighborhood addition in a shorter amount of time in higher volumes.

10.     After the Town of Amber completed the work, every time it rained, Plaintiffs' property began to flood in areas where it did not do so previously, preventing Plaintiffs from accessing their property from Chastain Avenue and eroding Plaintiffs' Property.

11.     Additionally, Plaintiffs discovered trash and debris flowing downstream onto their property along with the runoff water.

2

12.    In order to quantify the impact of the Town of Amber's changes to the drainage system and provide recommendations to alleviate the ongoing flooding and erosion issues, Plaintiffs hired Johnson & Associates, Inc. ("J&A"), a civil engineering firm, to prepare the Drainage Analysis and Recommendations report ("Drainage Report") dated August 25, 2025, attached hereto as Exhibit 1.

13.    In the Drainage Report, J&A analyzed the impact of the improvements on three distinct drainage areas: the West Drainage Area, the East Drainage Area, and the South Drainage Area. *See* Drainage Area Map, attached hereto as Exhibit 2.

14.    The West Drainage Area includes most of the residential neighborhood, stretching from 1st Street in the south, Main Street in the north, Highway 92 in the west, and Chastain Avenue in the east.

15.    Runoff water from the West Drainage Area flows southeastward onto the Plaintiffs' property located downstream and to the south of the subdivision.

16.    The flows are collected and directed through streets and borrow ditches to the outfall located at the terminus of Holly Avenue.

17.    The East Drainage Area covers a small part of the residential subdivision, most of the Amber High School campus, and some smaller areas of agricultural land.

18.    Water from the East Drainage Area generally flows south or southwest onto Plaintiffs' property.

19.    The flows are collected and directed through streets and borrow ditches to the outfall located at the terminus of Chastain Avenue.

20.    The flows from both the West and East Drainage Areas merge just upstream of a large historic farm pond on Plaintiffs' Property.

21.    The South Drainage Area includes all flows into the pond.

22.    In the Drainage Report, J&A used the Rational Method to estimate peak runoff rates from rainfall events for each drainage area.

23.    For the West Drainage Area, J&A determined that the peak time prior to the improvements was about 26 minutes and that it decreased to approximately 22.75 minutes after the improvements were installed.

24.    J&A determined that the increase in time resulted in nearly a 10 cubic feet per second ("CFS") increase in flow during a 100-year storm event.

25.    The flows from the West Drainage Area are split on the west and east sides of Holly Avenue as they enter the Plaintiffs' property and there is no culvert installed for the runoff to enter the creek.

26.    As a result, the runoff water builds up in the borrow pit until it overtops the gravel driveway, washing and eroding out the access route.

27.    For the East Drainage Area, J&A determined that the peak time prior to the improvements was about 18.2 minutes before the improvements and that it decreased to approximately 16 minutes after the improvements were installed.

28.    J&A determined that the increase in time resulted in nearly a 9 cfs increase in flow during a 100-year storm event.

4

29.   The flows from the East Drainage Area are split on the west and east sides of Chastain Avenue as they enter the Plaintiffs' property and there is no culvert installed for the runoff to enter the creek.

30.   As a result, the runoff water builds up in the borrow pit until it overtops the gravel driveway, washing and eroding out the access route.

31.   For the South Drainage Area, J&A determined that the peak time prior to the improvements was about 30.9 minutes before the improvements and that it decreased to approximately 27.5 minutes after the improvements were installed.

32.   J&A determined that the increase in time resulted in nearly a 23.5 cfs increase in flow during a 100-year storm event.

33.   J&A determined that the increased flows result in a higher-than-normal water surface elevation within the pond during the analyzed storm events.

34.   J&A also determined that increased flow causes the velocity to increase, resulting in increased erosion of the natural spillway.

35.   In order to mitigate the impacts of the improvements, J&A determined that additional capacity is needed in the downstream reach to route the increased flows to the pond.

36.   In order to accomplish this, J&A recommended that a 36-inch culvert, headwall, and energy dissipation be installed under the driveways located at the entrance to the Plaintiffs' property located at the terminus of Holly Avenue and Chastain Avenue.

37.     J&A further recommended that the existing borrow ditches upstream and downstream be upsized to provide a smooth hydraulic transition between the existing ditch configuration and the proposed design.

38.     Finally, J&A recommended that the existing pond outfall configuration be improved with an enhanced (hard or soft armor) spillway to mitigate increased flows and higher water surface elevations.

39.     If the remediation repairs are not completed, J&A concluded that erosion and washout of the drives and the pond will continue, ultimately causing financial hardship to the Plaintiffs through no fault of their own.

40.     Plaintiffs received an estimate for the work necessary to mitigate the impacts of the Town of Amber's improvements to their property in the amount of $214,650.10.

## COUNT I: VIOLATION OF PLAINTIFFS' FIFTH AND FOURTEENTH AMENDMENT RIGHTS PURSUANT TO 42 U.S.C. § 1983

41.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 40 above as if fully set forth herein.

42.     In relevant part, the Fifth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, prohibits the government from taking a citizen's private property for public use without just compensation.

43.     The Town of Amber, acting under color of state law by and through official policy authorized by the Town Board, undertook improvements to a residential

neighborhood addition that increased the volume and velocity of storm runoff water flowing onto Plaintiffs' property.

44.     In addition to bringing trash and other debris downstream, the increased runoff water has eroded Plaintiffs' Property such that portions of the same are inaccessible or not usable by Plaintiffs.

45.     The Town of Amber has not compensated Plaintiffs for the substantial impact its decision has had on Plaintiffs' Property and, as such, is an unconstitutional taking in violation of Plaintiffs' constitutional rights.

46.     As a direct result of this conduct, Plaintiffs have suffered actual damages in the amount of $214,650.10 for necessary remediation work and compensatory damages, including mental and emotional anguish, loss of land development business opportunities, and out of pocket expenses.

## COUNT II: INVERSE CONDEMNATION

47.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 46 above as if fully set forth herein.

48.     Article II, Section 24 of Oklahoma's Constitution provides, in relevant part, that "[p]rivate property shall not be taken or damaged for public use without just compensation. . . . When possession is taken of property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation awarded."

49.     If the government does not file a condemnation proceeding, a property owner may file a claim for inverse condemnation. *Page v. Oklahoma City,* 1927 OK 440, ¶1, 263 P. 448.

7

50.     The Town of Amber, a government entity with the power of eminent domain, undertook improvements to an existing drainage system for the benefit of the public, which increased the flow and velocity of storm runoff water flowing onto the Plaintiffs' property.

51.     The increased flow and velocity of the runoff water caused portions of Plaintiffs' property to flood and erode, resulting in the substantial interference with the use of Plaintiffs' Property, by, for example, preventing Plaintiffs or others from accessing their home on Chastain Avenue.

52.     As a result of the Town of Amber's substantial interference with Plaintiffs' Property for public use, Plaintiffs are entitled to just compensation for the portions of Plaintiffs' lands condemned by the Town of Amber's conduct and consequential damages, including damages to the portion of Plaintiffs' property not condemned by Defendant's conduct, damages arising from Plaintiffs' loss of use of Plaintiffs' Property, and Plaintiffs' lost business income.

WHEREFORE, Plaintiffs pray that this Court enter judgment in favor of Plaintiffs and against Defendant on Plaintiffs' claims, assess actual, compensatory, and consequential damages arising from Defendant's conduct, together with pre- and post-judgment interest, costs, reasonable attorney's fees, and any further relief as this Court may deem equitable and appropriate.

JURY TRIAL DEMANDED.

Respectfully submitted,


By:    */s/ Michael J. Hunter*
      Michael J. Hunter, OBA No. 4503
      **MICHAEL J. HUNTER PLLC**
      100 N. Broadway, Suite 3020
      BancFirst Tower
      Oklahoma City, OK  73102
      Telephone (405) 985-3828
      Email: mike@mjhlaw.net

      AND

      Lindsay N. Kistler, OBA No. 32814
      **KISTLER LEGAL GROUP PLLC**
      100 N. Broadway, Suite 3020
      BancFirst Tower
      Oklahoma City, OK  73102
      Telephone (405) 310-9209
      Email: lindsay@kistlerlegalgroup.com
      **ATTORNEYS FOR PLAINTIFFS,
      KEVIN KECK AND APRIL KECK**

9